## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

CHARGE INJECTION                    )
TECHNOLOGIES, INC.,                 )
                                    )
            Plaintiff,              )
                                    )
            v.                      )       C.A. No. 07C-12-134-JRJ
                                    )
E.I. DUPONT DE NEMOURS &            )
COMPANY,                            )
                                    )
            Defendant.              )

## OPINION

Date Submitted: March 4, 2015
Date Decided: March 31, 2015

*Upon Defendant E. I. DuPont De Nemours & Company's Renewed Motion to Compel Plaintiff to Respond to Defendant's Sixth Set of Requests for the Production of Documents and Things*: **DENIED.**

Ryan P. Newell, Esquire, Connolly Gallagher LLP, The Brandywine Building, 1000 West Street, Suite 1400, Wilmington, DE 19801, Amir H. Alavi, Esquire (*pro hac vice*) (argued), Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing P.C., 1221 McKinney, Suite 3460, Houston, Texas 77010, Attorneys for Plaintiff Charge Injection Technologies, Inc.

John A. Sensing, Esquire (argued), Kathleen F. McDonough, Esquire, Potter Anderson & Corroon LLP, 1313 North Market Street, P.O. Box 951, Wilmington, DE 19801, Attorneys for Defendant E. I. du Pont de Nemours & Company.

**Jurden, P.J.**

## I. INTRODUCTION

Before the Court is Defendant E. I. du Pont de Nemours and Company's ("DuPont") Renewed Motion to Compel. For the reasons that follow, DuPont's Motion is **DENIED.**

## II. BACKGROUND

Charge Injection Technologies, Inc. ("CIT") instituted suit against DuPont in December 2007, alleging that DuPont wrongfully used and disclosed CIT's proprietary and confidential technology.[1] Between November 2010 and October 2011, there was little activity in this case, apparently because of CIT's failure to pay prior counsel's bills.[2] On October 31, 2011, the Court granted CIT's original counsel's motion to withdraw.[3] On December 1, 2011, CIT's current lead counsel, Ahmad, Zavitsanos, Anaipakos, Alavi & Mensing ("AZA") entered its appearance in the case.[4]

In 2012, CIT obtained litigation financing from Aloe Investments Limited ("Aloe").[5] In the summer of 2013, upon learning of the litigation financing, DuPont questioned whether CIT had engaged in champerty and maintenance in violation of

---

[1] Compl. ¶ 1 (Trans. ID 17686607).
[2] *See* Trans. ID 40151517.
[3] *See* Trans. ID 40632788.
[4] *See* Trans. ID 54390858 ¶ 2.
[5] *See* Opening Brief in Support of Charge Injection Technologies, Inc.'s Motion for Protective Order and for Dissolution of the Stay of Proceedings, at 2 ("Pl.'s Opening Br. Mot. Protective Order") (Trans. ID 54390858).

Delaware law.[6] On August 12, 2013, DuPont filed an Emergency Motion to Stay ("Motion to Stay"), requesting a stay on the merits until the champerty and maintenance issues are resolved.[7]

Prior to filing its Motion to Stay, DuPont served CIT with discovery requests on the champerty and maintenance issue. DuPont's Sixth Set of Document Requests, which are also the subject of this Renewed Motion to Compel, seeks the production of: (1) litigation financing agreements between CIT and its investors; (2) communications between CIT or its attorneys and its investors pertaining to the investment and the negotiation of the financing agreement (including drafts of the financing agreements); and (3) communications between CIT or its attorneys and its investors pertaining to this litigation.[8]

CIT's interrogatory responses identified Aloe as an investor, and stated that CIT had no relationship to Aloe prior to January 1, 2007.[9] CIT refused to produce any documents in response to DuPont's document requests, including the litigation-financing agreement between CIT and Aloe ("Financing Agreement"), claiming such documents are protected as attorney work product and/or subject to attorney/client

---

[6] Defendant E.I. duPont de Nemours and Company's Emergency Motion to Stay Pending Resolution of Issues Relating to Champerty and-or Maintenance ("Mot. to Stay") (Trans. ID 53689757).

[7] *Id.*

[8] Defendant E.I. duPont de Nemours and Company's Opening Brief in Support of its Renewed Motion to Compel Plaintiff to Respond to Defendant's Sixth Set of Requests for the Production of Documents and Things at 2 ("Def.'s Opening Br. Renewed Mot. Compel") (Trans. ID 55650635).

[9] Pl.'s Opening Br. Mot. Protective Order, at 4.

privilege and the requests are irrelevant, overly broad and unduly burdensome.[10]

During the parties' meet-and-confer process, CIT represetned to DuPont that it did not assign any part of its claims to Aloe, and that it retains full control over litigation strategy and settlement.[11] CIT claimed that the purpose of this disclosure was "to put the Court's, and DuPont's, mind at ease that nothing remotely improper has occurred . . . ."[12] Rather than ease DuPont's mind, the disclosures heightened DuPont's suspicion that CIT might be engaging in champerty and maintenance.

On October 16, 2013, DuPont filed a motion to compel CIT to produce documents responsive to its document requests relating to champerty and maintenance.[13] That same day, CIT filed a motion for protective order.[14]

Following briefing and oral argument, the Court requested that CIT provide a copy of the Financing Agreement for the Court's *in camera* inspection.[15] After the Court completed its *in camera* inspection of the Financing Agreement, the Court convened a teleconference, during which it asked CIT to submit a redacted version of the Financing Agreement for the Court's *in camera* review, and advised the parties that it would likely order CIT to produce a redacted version to DuPont after the

---

[10] *See* Pl.'s Opening Br. Mot. Protective Order.
[11] *Id.* at 4.
[12] *Id.* at 2.
[13] Defendant E.I. duPont de Nemours and Company's Motion to Compel Plaintiff to Respond to Defendant's Sixth Set of Requests for the Production of Documents and Things ("Mot. Compel") (Trans. ID 54394124).
[14] Plaintiff Charge Injection Technologies, Inc.'s Motion for Protective Order and for Dissolution of the Stay of Proceedings (Trans. ID 54390858).
[15] *Charge Injection Technologies, Inc. v. E.I. DuPont de Nemours & Co.*, 2014 WL 891286, at *2 (Del. Super. Feb. 27, 2014).

Court's review.[16] The Court further advised that it did not find that the entire Financing Agreement was attorney work product.[17]

On February 27, 2014, the Court denied CIT's motion to compel in part, and deferred ruling in part.[18] The Court denied CIT's motion "insofar as it seeks a blanket protective order allowing it to withhold all documents sought by DuPont in connection with DuPont's potential champerty and maintenance defenses without producing a privilege log in accordance with Super. Ct. Civ. R 26(b)(5)."[19] The Court deferred ruling on whether the Financing Agreement constituted champerty and/or maintenance.[20]

On February 28, 2014, CIT submitted its proposed redactions to the Financing Agreement for the Court's *in camera* inspection as well as a cover letter, explaining the basis for the redactions.[21] CIT purported to redact "the terms regarding the economics and timing of the financings, as well as terms concerning repayment."[22]

On March 6, 2014, the Court ruled on CIT's proposed redactions, permitting CIT to make the following redactions: (1) the dollar amount of the three purchase

---

[16] *Id.*

[17] *Id.*

[18] *Id.* at *4.

[19] *Id.*

[20] *Id.* On March 7, 2014, CIT filed an Application for Certification of an Interlocutory Appeal of the Court's February 27, 2014 decision. *See* Trans. ID 55114886. On April 1, 2014, this Court denied CIT's Application for Certification, and on April 7, 2014, the Delaware Supreme Court refused CIT's interlocutory appeal. *See* Trans. ID 55232499; *Charge Injection Technologies, Inc. v. E.I. DuPont de Nemours & Co.*, 89 A.3d 476 (Del. 2014) (TABLE).

[21] Plaintiff's February 28, 2014 Letter to the Court Regarding In Camera Review (Trans. ID 55112034).

[22] *Id*.

options that Aloe is entitled to exercise under the Financing Agreement; (2) the percentage of CIT's recovery in this litigation (through judgment or settlement) that Aloe is entitled to; (3) the percentage annual return that Aloe is entitled to if CIT's recovery is under a certain figure; and (4) the percentage of CIT's recovery that its lead counsel AZA would be entitled to (contingency fee).[23] The Court ordered CIT to produce the redacted version of the Financing Agreement and its privilege log by March 17, 2014.[24] To the extent CIT determined that certain documents were not privileged, the Court ordered CIT to produce those documents by March 17, 2014.[25]

CIT produced the redacted version of the Financing Agreement on March 17, 2014, a privilege log and a separate redaction log on March 18, 2014, and a supplemental privilege and redaction logs on March 19, 2014.[26] CIT also produced approximately 800 pages of documents.[27]

On June 26, 2014, DuPont filed the instant Renewed Motion to Compel seeking a version of the Financing Agreement that unredacts the percentages of CIT's recovery that Aloe is entitled to, AZA's contingency fee, and the interest rate Aloe is entitled to receive on its investment amount in certain circumstances.[28]

---

[23] March 6, 2014 Order Regarding Redactions (Trans. ID 55103244).
[24] *Id.*
[25] *Id.*
[26] Def.'s Opening Br. Renewed Mot. Compel, at 5.
[27] *Id.*
[28] *Id.* at 7. These percentages are located in Schedule 2 of the financing agreement. *Id.* at Ex. C.

## III. PARTIES' CONTENTIONS

CIT argues that the redacted payment terms are privileged information and not relevant to whether the Financing Agreement constitutes champerty or maintenance.[29] CIT contends that the redacted payment terms are protected by Delaware's work product doctrine because disclosure of the payment terms will reveal the mental impressions of CIT and its attorneys regarding the merits of the litigation.[30] According to CIT, Aloe's percentage of recovery reflects the parties' assessment of the risk of the case, an assessment it reached based on the disclosure of core work product from CIT about the case.[31] CIT argues that DuPont cannot overcome the work production protection because Aloe's and AZA's percentage of recovery is not relevant to champerty or maintenance.[32]

In response, DuPont argues that the redacted information is not protected by Delaware's work product doctrine because Aloe is a third-party investor and the financing agreement was created in the ordinary course of business.[33] According to DuPont, while the Financing Agreement and the redacted information contained therein has a connection to the litigation, it does not "deal in any way" with the merits of the litigation and does not reflect any discussions or strategy or other trial

---

[29] Plaintiff's Brief in Opposition to Defendant's Motion to Compel, at 1 ("Pl.'s Opp'n Renewed Mot. Compel") (Trans. ID 55811372).
[30] *Id.* at 4–5.
[31] *Id.*
[32] *Id.* at 6–8.
[33] Def.'s Opening Br. Renewed Mot. Compel, at 15–16.

preparation.[34]

DuPont also argues that even if the redacted information is work product, it constitutes factual work product and not opinion work product.[35] Thus, DuPont asserts that it can overcome the work product doctrine because it has a substantial need for the redacted payment terms and cannot obtain the information through other means.[36] DuPont maintains that the redacted percentages of Aloe and AZA's potential recovery are necessary to its champerty and maintenance defense because the percentages will illustrate the extent of the control that Aloe and AZA are exercising over this litigation, including its implicit control over CIT's ability to settle this case.[37]

## IV. STANDARD OF REVIEW

As a general rule, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ."[38] If a party asserts a privilege, that party bears the burden of establishing that documents or communications are protected by privilege.[39]

The modern articulation of the work product privilege is traced to the United

---

[34] *Id.* at 9–10 ("They are just percentages.").
[35] *Id.* at 10.
[36] *Id.*
[37] *Id.*
[38] Del. Super. Ct. Civ. R. 26(b)(1).
[39] *Rembrandt Technologies, L.P. v. Harris Corp.*, 2009 WL 402332, at *5 (Del. Super. Feb. 12, 2009).

States Supreme Court's opinion in *Hickman v. Taylor*.[40] Superior Court Civil Rule 26(b)(3) codifies the work product doctrine and generally bars the discovery of materials created in anticipation of litigation or for trial preparation, unless there is a showing of "substantial need" and "undue hardship."[41] Even when such a showing of need and undue hardship is made, the doctrine affords nearly absolute protection to opinion work product, which includes the "mental impressions, conclusions, opinions or legal theories of an attorney concerning litigation, and all documents prepared by or for an attorney in anticipation of litigation."[42] Disclosure of opinion work product is subject to a more stringent standard, and a court will protect opinion work product unless the requesting party can show that it is directed to the pivotal issue in the litigation and the need for the information is compelling.[43]

## V. DISCUSSION

Under Delaware law, application of the work product doctrine depends upon the reason why the document was created.[44] "Delaware courts have expressly rejected the primary purpose test, which asks whether the primary purpose of the document [is] for litigation, in favor of the 'because of litigation' test."[45] If the document was

---

[40] 329 U.S. 495 (1947).
[41] Del. Super. Ct. Civ. R. 26.
[42] *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 262 (Del. 1995); *Rembrandt Technologies*, 2009 WL 402332, at *9.
[43] *Tackett*, 653 A.2d at 262.
[44] *JPMorgan Chase & Co. v. Am. Century Companies, Inc.*, 2013 WL 1668393, at *3 (Del. Ch. Apr. 18, 2013).
[45] *Id.*

created "because of litigation," then it is likely privileged.[46] "If the document was created for some other reason, such as a business purpose, then it is likely not protected."[47] However, "work product protection is not precluded merely because [a] document may also serve a business function."[48] To receive work product protection, the dual-purpose document must have been created "because of" the litigation.[49]

The Court of Chancery of Delaware recently addressed the question of whether documents prepared by or for a third-party litigation funder and shared between the funder and a party's counsel constitute privileged work product under Delaware law.[50] In *Carlyle Investment Management L.L.C. v. Moonmouth Company S.A*, after a thorough analysis, the Court of Chancery held that documents concerning the negotiation of a litigation funding agreement were protected by Delaware's work product doctrine because they were "prepared in anticipation of litigation" and more likely than not included discussions of the merits of the litigation and potential strategies.[51]

The Court of Chancery explained that in the context of third-party litigation funding, the overlap between business and litigation reasons for the creation of litigation funding documents is more extensive than usual because the litigation itself

---

[46] *Id.*

[47] *Id.*

[48] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, *8 (Del. Ch. Feb. 24, 2015).

[49] *Id.*

[50] *Id.* at *7 (discussing that only a few American courts have addressed work product privilege in the context of litigation funding agreements). Court of Chancery Rule 26(b)(3) is substantially similar to Superior Court Civil Rule 26(b)(3).

[51] *Id.* at *9.

is part of the business.[52] However, the Court concluded that there is not "anything so unique about third-party funding as to require a different inquiry than usual in work product cases," because "[i]n those instances where a claim cannot proceed without third-party financing, one element of preparing a client's case for trial will be securing the requisite funding, which probably will require discussions of a case's merits in an effort to convince the third party to supply the needed funds."[53] The Court of Chancery expanded on this, explaining that:

> Allowing work product protection for documents and communications relating to third-party funding places those parties that require outside funding on the same footing as those who do not and maintains a level playing field among adversaries in litigation. Thus, even though claim funding is the business of financing lawsuits, which means the [litigation funding documents] serve a business purpose, those documents simultaneously also are litigation documents and work product protection is appropriate.[54]

In the present case, the payment terms at issue in the Financing Agreement were prepared in anticipation of litigation and reflect the type of attorney mental impressions and litigation strategies which are afforded nearly absolute protection from discovery under the work product doctrine.[55]

According to CIT, the redacted payment terms reflect an assessment of the risk of the case, an assessment Aloe and AZA reached based on the disclosure of core work product from CIT's attorney's about the case. To secure financing for the

---

[52] *Id.* at *8–9.
[53] *Id.*
[54] *Id.* at *9.
[55] *See Carlyle*, 2015 WL 778846.

11

litigation, CIT would likely need to convince Aloe of the merits of the case and, therefore, the negotiation process and final payment terms of Aloe's and AZA's percentage of recovery more likely than not required discussions of the merits of the case and reveal CIT's attorney's mental impressions, theories, and strategies about the case.

## VI.  CONCLUSION

Under Delaware law, the redacted payment terms in the Financing Agreement are entitled to work product protection, and that protection is not precluded merely because the Financing Agreement may also serve a business function. Furthermore, DuPont has not satisfied the more stringent pivotal issue/compelling need standard[56] to overcome CIT's opinion work product protection.

For the foregoing reasons, DuPont's Renewed Motion to Compel is **DENIED.**

**IT IS SO ORDERED.**

_____
Jan R. Jurden, President Judge

---

[56] _See Tackett_, 653 A.2d at 262 ("[I]n order to obtain mental impressions under Rule 26(b)(3), the mental impressions must be directed to the pivotal issue in the current litigation and the need for the material must be compelling.").